MoKinnev, J.,
delivered the opinion of the Court.
The complainant was guardian of her minor daughter, Catharine Singleton, who, in the year 1854, at about the age of twenty years, intermarried with the defénd- *360 ant, Love, and died some six weeks after her marriage. In a short time after the death of his wife, Love brought a suit at law against the complainant and her sureties, on her guardian bond, to recover what he claimed to be the personal estate of his deceased wife — having previously taken out letters of administration on her estate. To enjoin this suit, and to obtain a decree confirming her acts as guardian in the conversion of the property of her ward, are the objects of the bill.
It appears that the estate of the ward consisted of about $172 in money, a piece of land of about thirty acres, and an undivided interest, as tenant in common with her brothers and sisters, in the tract of land on which the family had resided, descended from her deceased father, Daniel Singleton, and on which she and her mother continued to reside. In the year 1853, and not very long before her marriage, she expressed an earnest desire to become the sole owner of the tract of land on which she and her mother lived, by purchasing the shares of her brothers and sisters, or as many of them as she could raise the means of paying for. And, being then of the age of nineteen, she urged her guardian to make sale of the thirty acre tract of land, which was of but little value, and to invest the proceeds thereof, together with her money in her guardian’s hands, in the purchase of the homestead.
According to her wishes, the complainant, as her guardian, sold the thirty acre tract to one Crouch for $200, which was a full price for it, and proceeded to purchase five shares of the home place, at $50 each, which is shown to have been not much more than half the value of said shares. In this way one hundred *361 dollars of the proceeds cf the thirty acre tract, and one hundred and fifty dollars of the money in the guardian’s hands, were expended for the benefit of the ward. For the remaining $100 of the price of the thirty acre tract, the guardian held the note of the purchaser; and this, with a balance of about $22, constituted the entire personal estate of the ward remaining after said purchase.
In all this transaction the guardian seems to have acted in the utmost good faith, and with no other motive than to promote the best interests of her ward. The transaction is shown by the proof to have been highly advantageous to the ward, and seems to have been fully approved by her up to her death.
It appears also that the defendant, who lived in the neighborhood, had full knowledge of all these facts before his marriage with said ward, and approved and acquiesced therein, fully, until after the death of his wife. And in confirmation thereof, he received from the guardian, after his marriage, the $100 note taken in part for the purchase of the small tract of land, and brought suit to recover the money due thereon after his wife’s death, as administrator of her estate, and obtained judgment accordingly. And, furthermore, in his answer he expressly ratifies the sale of the thirty acre tract, and declares his willingness to make any such title to the purchaser for the same as the law authorizes. Ascertaining afterwards that he could not hold the land purchased for his wife, and claiming the right to dissent from, and to annul the contract for the purchase of the land, by the guardian, he instituted suit upon the guardian’s bond *362 to recover the sum of two hundred and fifty dollars, the amount paid for said land.
The Chancellor, by his decree, fully approved and ratified all the acts of the guardian in the premises; but held, nevertheless, that the defendant was entitled to be reimbursed the amount of money invested in the land, and so decreed against the complainant. And the case is brought here by both parties.
It is true as argued, that, as a general rule, a guardian- has no power without the direction of a Court of Chancery to convert the personal estate of the infant into real, or to invest his money in land. Neither has the guardian any power whatever to convert the real estate into personal. The Court of Chancery itself has no inherent original jurisdiction to convert the real estate of an infant, as we have recently determined — the power to do so being derived entirely from the statute of 1827.
But as respects the investment of an infant’s money in land, the jurisdiction of changing the nature of the estate has been exercised by the Court in cases where it was made to appear that it would be for the manifest benefit of the infant; but, in the language of Lord EldoN, <£with this qualification, that if he lives, he may take it as real estate, but without prejudice to his right over it, during infancy, as personal property.” 19 Ves., 122. And, in some cases, the Court has supported a conversion by the guardian out of Court, in investing the infant’s money in land, where the circumstances were such that the Court itself would have ■ directed a like investment. But the infant, when he arrives at full age, will have his election to take the land, or the money thus invested, with interest. And if he dies under *363 the age of twenty-one, his proper representative will have the right to treat the real estate purchased with the infant’s money, as personalty, and distributable as such.
From these principles it clearly follows that the wife of the defendant, had she lived to attain her full age and remained sole, might have treated the..acts of her guardian in selling her real property and laying out her money in other lands, as not binding; or she might have affirmed them. But it is clear, that had she elected to disaffirm the purchase, she would have been required to relinquish all title to the land purchased by the guardian.
And as she married during minority, her husband, w'ho was sui juris, might, perhaps, upon his marriage, with her concurrence, have disaffirmed the acts of the guardian; or, inasmuch as she died before arriving at full age, the husband, upon his appointment as administrator, might then have dissented. But he did not do so at either period.
During the life of his wife he seems to have fully acquiesced, and to have regarded it, as did all other persons, as a most beneficial arrangement for his wife. And after her death he approved and ratified the act of the guardian, so far as respects the sale of the thirty acres of land, by the unequivocal act of receiving, suing for, and appropriating to his own use the note for $100, taken in part payment for said land; and in his answer, as well as in the cross-bill, he still expresses his approval of that transaction, and his willingness to make title to the purchaser, as before stated. By this act he is concluded as to the whole matter. Neither the ward *364 nor the husband in her right, could elect to ratify the transaction in part, and repudiate it in part.
It was essentially an entire transaction. One-half of the price of the thirty acres was discharged by a transfer to the guardian, for the benefit of the ward, of two shares of the home place; and as part of one entire agreement with the ward, the money of the latter, about the same time, was expended in the purchase of the other shares. And being entire, it must be ratified or rejected as a whole.
In- view of all the facts, we think the decree of the Chancellor, so far as it approves and confirms the acts of the guardian in the purchase of the several shares of the home place, was correct, and we affirm it thus far, being fully satisfied that, in every view, it was a most profitable and judicious arrangement for the interest of the ward. But, in so far as the decree holds the defendant entitled to be reimbursed the amount invested in the purchase of the land, it is erroneous, being self contradictory and repugnant. The effect is, to declare that the guardian properly invested $250.00 of the infant’s money in the purchase of the land, which was, to that extent, a sufficient discharge of the liability of the guardian: but, notwithstanding she had rightfully once accounted for the money in that way, to charge her with the payment of it a second time, in favor of the husband, who, by his acts of confirmation, is precluded from any relief. There is no principle upon which this part of the decree can be sustained.
The result is, that the land purchased descends to the heirs of the wife, she having' died without issue born of the marriage with defendant. All that the de *365 fendant can claim in this ease, is the small balance of money remaining in the guardian’s hands after the purchase of the land. The cross-bill will be dismissed and, with the modification before indicated, the decree will be affirmed.